# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:16CV392

| | |
|---|---|
| CHRISTINE J. HENSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

    This matter is before the Court on the parties' cross motions for summary judgment (# 6, 9). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits. The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons set forth below, the Court recommends that Plaintiff's motion for summary judgment be granted and the Commissioner's motion for summary judgment be denied.

## I.    Procedural History

    On October 7, 2010, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (Transcript of Administrative Record ("T.") 304-06.) Plaintiff alleged a disability onset date of March 20, 2010. (T. 304-06.) The Social Security Administration denied Plaintiff's claim initially on January 26, 2011. (T. 246-250.) The claim was denied upon reconsideration on August 30, 2011. (T. 255-257.) On October 26, 2011, Plaintiff filed a written request for a hearing. (T. 258-59.)

    On October 30, 2012, a disability hearing was held before an Administrative Law Judge ("ALJ") in Greenville, South Carolina. (T. 138-181.) The ALJ issued a decision finding that

Plaintiff was not disabled from March 20, 2010, through the date of his decision, March 1, 2013. (T. 221-235.) Plaintiff requested review of the ALJ's decision. (T. 242.) The Appeals Council granted Plaintiff's request for review and remanded the case for additional administrative proceedings. (T. 241-245.)

The ALJ conducted a second hearing on March 25, 2015. (T. 63-137.) On April 24, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act from her alleged onset date, March 20, 2010, through the date she was last insured, December 31, 2014. (T. 10-54.)

The Appeals Council denied Plaintiff's request for review of the ALJ's second decision. (T. 1-3.) On December 8, 2016, Plaintiff filed the instant action seeking review of the Commissioner's final decision. See Compl. (# 1)

## II.  Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Under the five-step sequential evaluation, the Commissioner must consider each of the following, in order: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the listing of impairments contained in Appendix 1 of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant

2

can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520; Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 653 n.1.

At the first two steps of the sequential evaluation, the burden is on the claimant to make the requisite showing. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If a claimant fails to satisfy his or her burden at either of these first two steps, the ALJ will determine that the claimant is not disabled and the process comes to an end. Mascio v. Colvin, 780 F.3d 632, 634-35 (4th Cir. 2015). The burden remains on the claimant at step three to demonstrate that the claimant's impairments satisfy a listed impairment and, thereby, establish disability. Monroe, 826 F.3d at 179.

If the claimant fails to satisfy his or her burden at step three, however, then the ALJ must still determine the claimant's RFC. Mascio, 780 F.3d at 635. After determining the claimant's RFC, the ALJ proceeds to step four in order to determine whether the claimant can perform his or her past relevant work. Id. The burden is on the claimant to demonstrate that he or she is unable to perform past work. Monroe, 826 F.3d at 180. If the ALJ determines that a claimant is not cable of performing past work, then the ALJ proceeds to step five. Mascio, 780 F.3d at 635.

At step five, the ALJ must determine whether the claimant can perform other work. Id. The burden rests with the Commissioner at step five to prove by a preponderance of the evidence that the claimant is capable of performing other work that exists in significant numbers in the national economy, taking into account the claimant's RFC, age, education, and work experience. Id.; Monroe, 826 F.3d at 180. Typically, the Commissioner satisfies her burden at step five through the use of the testimony of a vocational expert ("VE"), who offers testimony in response to a hypothetical question from the ALJ that incorporates the claimant's limitations. Mascio, 780 F.3d

3

at 635; Monroe, 826 F.3d at 180. If the Commissioner satisfies her burden at step five, then the ALJ will find that the claimant is not disabled and deny the application for disability benefits. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180.

### III. The ALJ's Decision

In his April 24, 2015, decision, the ALJ ultimately found that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2014, the date last insured. (T. 54.) In support of this conclusion, the ALJ made the following specific findings:

(1)  The claimant last met the insured status requirements of the Social Security Act on December 31, 2014.[1]

(2)  The claimant did not engage in substantial gainful activity during the period from her alleged onset date, March 20, 2010, through her date last insured, December 31, 2014 (20 C.F.R. § 404.1571 et seq.).

(3)  Through the date last insured, the claimant had the following severe impairments: obesity,[2] fibromyalgia, cervical and lumbar spine degenerative disc disease, status post right ankle fracture in October 2010 and Achilles tendinopathy, asthma/sleep apnea, irritable bowel syndrome/GERD, headaches, depression, post-traumatic stress disorder, anxiety, ADHD, and personality disorder (20 C.F.R. § 404.1520(c)).[3]

(4)  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

(5)  Through the date last insured, the claimant had the RFC to perform medium work (lift, carry, push, or pull 50 pounds occasionally and 25 pounds frequently, stand or walk 6 hours in a 8-hour workday, and sit 6 hours in a 8-hour workday) as defined in 20 C.F.R. § 404.1567(c), except with the following limitations: frequently climb ramps/stairs, balance, stoop, kneel, and crouch; never climb ladders/ropes/scaffolds; occasionally crawl; frequently reach overhead and handle with bilateral upper extremities; avoid concentrated exposure to environmental irritants and hazards;

---

[1] Citing Bird v. Comm'r of Soc. Sec., 699 F.3d 337 (4th Cir. 2012), the ALJ noted that he had properly considered the evidence relating to the period after the date last insured. (T. 11-12.)
[2] Plaintiff testified that she was 5'5" and weighed 250 pounds. (T. 24.)
[3] The ALJ found that Plaintiff had the following non-severe impairments: status post left wrist fracture in January 2014, intermittent numbness in upper extremities, hyperthyroidism, and hypertension. (T. 14.)

4

(5) perform simple, repetitive, and routine tasks; needs a low stress environment, which is defined in functional terms as having no contact with the public.

(6) Throughout the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. § 404.1565).[4]

(7) The claimant was born on January 25, 1970, and she was 44 years old, which is defined as a younger individual age 18-49, on her date last insured (20 C.F.R. § 404.1563).

(8) The claimant has at least a high school education, and she is able to communicate in English (20 C.F.R. § 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10) Through the date last insured, considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed (20 C.F.R. §§ 404.1569, 404.1569(a)).[5]

(11) The claimant was not under a disability, as defined in the Social Security Act, at any time from March 20, 2010, through December 31, 2014, the date last insured (20 C.F.R. § 404.1520(g)).

(T. 10-54.)

**IV. Standard of Review**

Title 42, United States Code, Section 405(g) provides that an individual may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review is limited in that the district court "must uphold the factual findings of the Secretary if they are supported by

---

[4] Plaintiff's past relevant work includes the following: a registered nurse/general duty nurse, a CNA/nurse assistant, a stress test technician, and a Holter scanning technician. (T. 52.)

[5] The VE testified that Plaintiff would have been able to perform the requirements of the following representative occupations: order filler, with 300,000 jobs available nationally; dietary aide, with 100,000 jobs available nationally; and kitchen helper, with 400,000 jobs available nationally. (T. 53.)

substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); accord Monroe, 826 F.3d at 186. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig, 76 F.3d at 589 (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's final decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law. Id.

## V. Discussion

**The ALJ erred by failing to give proper weight to treating specialist Dr. Bierrenbach.**

In Plaintiff's first and most compelling argument, she argues that the ALJ erred by discrediting the opinions offered by her treating sources. Pl.'s Mem. Supp. (# 6-1) at 5-13. In particular, Plaintiff contends that the ALJ made factual findings that were not supported by substantial evidence and the entirety of the record in a manner that violated Social Security Ruling ("SSR") 96-2p and 20 C.F.R. § 404.1527(c)(2). Id. at 5. Plaintiff concludes that the ALJ's April 24, 2015, decision must be reversed, or in the alternative, the case must be remanded for a new administrative hearing. Id. at 16.

The Regulations provide as follows with respect to the Social Security Administration's criteria for evaluating opinion evidence:

> Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable

6

Case 1:16-cv-00392-MR-DLH   Document 11   Filed 03/06/18   Page 6 of 19

medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. § 404.1527(a)(2).[6] The Regulations direct that the ALJ must analyze and weigh the evidence of record with the following factors taken into consideration: (1) length of treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. 20 C.F.R. § 404.1527(c)(2)-(6); see Cohen v. Berryhill, 272 F. Supp. 3d 779, 781 (D.S.C. Aug. 23, 2017). As a general rule, more weight is given to a medical professional who examines a claimant, as opposed to a non-examining source. 20 C.F.R. § 404.1527(c)(1); see Patterson v. Colvin, No. 5:12-CV-063-RLV-DCK, 2013 WL 3035792, at *4 (W.D.N.C. June 17, 2013).

SSR 96-2p[7] provides that when

a treating source opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *4. SSR 96-2p further requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Id. at 5.

---

[6] This reflects the Regulation as it stood on the date of the ALJ's decision, April 24, 2015.
[7] With respect to claims filed after March 27, 2017, the Regulations have been amended and SSR 96-2p has been rescinded. Cohen v. Berryhill, No. 2:16-CV-01238-RMG-MGB, 2017 WL 3638229, at *5 n.6 (D. S.C. July 31, 2017). The instant case was filed before March 27, 2017; thus, the Court has analyzed Plaintiff's claim under the treating physician rule set forth above.

The Court finds that the ALJ essentially "cherry-picked" Plaintiff's mental health evidence to support his ultimate finding that she was not disabled. (T. 19-24, 26, 31-35, 37-45, 47-50.) "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017). This is most noticeable as it relates to Dr. Bierrenbach's opinions, which are supported by the evidence from numerous other mental health professionals. (T. 43-44.) Dr. Bierrenbach's opinions, which include the opinion that Plaintiff met Listings 12.04 and 12.06 (T. 1343, 1359), should have been given "more weight." In particular, Dr. Bierrenbach was a specialist and a long-term treating source, who treated Plaintiff both in-patient and outpatient. The Court will now proceed to summarize all of Plaintiff's mental health evidence to demonstrate that Dr. Bierrenbach's opinions have ample support in the record.

In 2010 through June 2011, Plaintiff saw Linda Melrose, Ph.D.[8] (T. 31.) The Court has reviewed the entire record and is unable to locate specific findings from Dr. Melrose. The ALJ also does not address specific findings from Dr. Melrose. See (T. 10-54.)

On December 1, 2010, Plaintiff received a State agency mental consultative evaluation with W. Jim Miller, Ph.D. (T. 32, 685-90.) Dr. Miller noted that Plaintiff last worked in 2009 as a registered nurse. (T. 686.) Plaintiff's husband is a Vietnam Veteran who suffers with post-traumatic stress disorder and bipolar depression. (T. 686.) Plaintiff explained that she does not like crowds because they make her anxious. (T. 686.) Plaintiff cannot leave the house, and she cannot drive anywhere. (T. 686.) Plaintiff has been in treatment for one year with Linda Melrose, a therapist. (T. 687.) Miller diagnosed Plaintiff with post-traumatic stress disorder and attention deficit hyperactivity disorder, combined type. (T. 688.) Miller opined that Plaintiff's current GAF

---

[8] The ALJ notes that Dr. Melrose is a "psychiatrist." (T. 31.) This is not an accurate statement. A psychiatrist is a medical doctor, not an individual with their doctorate in psychology.

was 45. (T. 688.) Miller found that Plaintiff was "marginally capable" of handling her own business. (T. 689.)

The ALJ gave Dr. Miller's medical source opinion "some weight." (T. 37.) The ALJ noted that Dr. Miller's opinion was given approximately four and a half years prior, so its relevance was greatly decreased, based on the lapse of time and subsequent evidence. (T. 38.) The ALJ gave Dr. Miller's limitations regarding social functioning "some weight," and the limitations to simple, repetitive, and routine tasks were given "great weight." (T. 38.)

On January 25, 2011 and August 26, 2011, State agency record reviewing evaluators examined Plaintiff's medical records. (T. 183-95, 197-217.) The ALJ only gave "some weight" to the State agency record reviewing evaluators on the basis that the opinions were given four years and over three years prior. (T. 37.) The ALJ concluded that the relevance of the opinions was "greatly decreased." (T. 37.) The ALJ determined that the subsequent evidence showed that Plaintiff needs a low stress work environment, which is defined in functional terms as having no contact with the public. (T. 37.)

On May 18, 2011, Plaintiff received a mental consultative evaluation with Carolyn G. Conroy, Ph.D. (T. 32, 895-99.) Dr. Conroy noted that Plaintiff seemed "severely depressed" and repeatedly verbalized passive suicidal feelings. (T. 896.) Dr. Conroy further noted that an accurate assessment was difficult because of Plaintiff's low level of compliance with the evaluation. (T. 897.) Dr. Conroy diagnosed Plaintiff with major depression, recurrent, and Dr. Conroy opined that Plaintiff's current global assessment of functioning ("GAF") was 45-50.[9] (T. 897.) Dr.

---

[9] A GAF score between 41 and 51 indicates serious symptoms "(e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting)" or "any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job.)" Hollingsworth v. Berryhill, No. 1:16CV1316, 2018 WL 851378, at *6 (M.D.N.C. Feb. 13, 2018) (qoting Am. Psychiatric Ass'n Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM IV")).

Conroy attempted to facilitate Plaintiff's admission in a psychiatric facility.[10] (T. 898.) Dr. Conroy opined that she did "not think that [Plaintiff] would be able to work competitively in <u>any</u> manner. She also would not be able to tolerate the stress and pressures associated with day to day activity." (T. 898) (emphasis added).

The ALJ found that it was reasonable to conclude that Plaintiff had used cocaine the night before her evaluation with Dr. Conroy, which would make her findings less accurate and reliable. (T. 32.) The ALJ concluded that Dr. Conroy's opinion was entitled to "little weight." (T. 32.)

On August 16, 2011, Plaintiff had a comprehensive clinical psychological evaluation with Jerelene V. Howell, M.S., which was supervised by Jennifer Zeisz, Ph.D. (T. 33, 932-39.) Howell noted that Plaintiff presented with a "blunted affect and depressed mood." (T. 932.) Plaintiff presented with the following psychiatric medications: Cymbalta, Amitriptyline, Abilify, Klonopin, and Ritalin. (T. 933.) Howell diagnosed Plaintiff with major depressive disorder, recurrent, moderate, without psychotic features; generalized anxiety disorder; attention deficit/hyperactivity disorder, combined type; post-traumatic stress disorder; and a current GAF of 64. (T. 936.) Howell noted that Plaintiff reported mild to moderate cognitive impairment for activities of daily living. (T. 937.) Howell opined that Plaintiff would likely have problems with persistence and pace in an employment environment at that time. (T. 936.) Moreover, due to Plaintiff's low tolerance for frustration, she would likely have some difficulty appropriately interacting with coworkers and supervisors in an employment setting. (T. 937.)

The ALJ gave Howell's opinion "some weight." (T. 38.) The ALJ noted that the opinion was given approximately four years prior; thus, its relevance was greatly decreased. (T. 38.) The

---

[10] In May 2011, Plaintiff was hospitalized for approximately 13 days. (T. 32.) On admission, her drug screen was positive for cocaine. (T. 32.)

limitations to essentially simple, repetitive, and routine tasks were given "great weight." (T. 38.) Howell's social functioning limitations were given "some weight." (T. 38.)

Plaintiff was also treated, both on an in-patient and outpatient basis, by Ricardo Bierrenbach, M.D., a psychiatrist. On January 30, 2013, Dr. Bierrenbach gave Plaintiff a complete mental health evaluation. (T. 1262.) At that time, Plaintiff reported a prior psychiatric admission for depression. (T. 1262.) Dr. Bierrenbach diagnosed Plaintiff with the following: bipolar, type 1, most recent episode depressed moderate; post-traumatic stress disorder; and attentive deficit hyperactive disorder. (T. 1263.) Dr. Bierrenbach recommended therapy to address ongoing issues. (T. 1264.)

On June 3, 2013, Dr. Bierrenbach competed a "Psychiatric Review Technique," in which he opined that Plaintiff's mental impairments equaled Listings 12.04 (Affective Disorders)[11] and 12.06 (Anxiety-Related Disorders), from March 2010 to the present. (T. 1343.) With respect to Listing 12.04, Dr. Bierrenbach opined that Plaintiff exhibited the requisite symptoms. (T. 1346.) In particular, Dr. Bierrenbach found that Plaintiff had depressive syndrome characterized by the following: anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking. (T. 1346.) Plaintiff was also determined to exhibit manic syndrome characterized by the following: hyperactivity, pressures of speech, flight of ideas, deceased need for sleep, and easy distractibility. (T. 1346.) As for Plaintiff's anxiety-related disorders, Dr. Bierrenbach found that Plaintiff experienced recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress. (T. 1348.) Dr. Bierrenbach found

---

[11] An "affective disorder" is "characterized by disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Davis v. Comm'r Soc. Sec., No. 5:14CV83, 2015 WL 105974, at *25 (N.D. W.Va. Jan. 7, 2015) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04).

that Plaintiff suffered with the following functional limitations, or "B" Criteria: mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and four or more episodes of decompensation, each of extended duration.[12] (T. 1353.) With respect to the "C" criteria, Dr. Bierrenbach opined that Plaintiff had suffered repeated episodes of decompensation, each of extended duration. (T. 1354.)

Also on June 3, 2013, Dr. Bierrenbach completed a "Medical Source Opinion (Mental)." (T. 1356-58.) Dr. Bierrenbach opined that Plaintiff was "moderately limited"[13] in the following areas: ability to understand and remember very short and simple instructions; ability to understand and remember detailed instructions; ability to carry out simple instructions; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to sustain an ordinary routine without special supervision; ability to make work-related decisions; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; ability to respond appropriately to changes in the work setting; and ability to travel in unfamiliar places or use public transportation. Dr. Bierrenbach opined that Plaintiff was "moderately-severely"[14] limited in the following areas: ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to work in coordination with, or in proximity to, others without being distracted by them; ability to

---

[12] "Episodes of decompensation" are defined as "exacerbations or temporary increases in symptoms or signs by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, of pace." Ridge v. Berryhill, No. 1:17-CV-00838-MJD-JMS, 2018 WL 329047, at *4 (S.D. Ind. Jan. 9, 2018) (quoting 20 C.F.R. 404, Subpt. P, App. 1 § 12.00).
[13] According to the form, "moderately limited" is defined as "[t]here is moderate limitation in this area but the individual is still able to function satisfactorily." (T. 1356.)
[14] According to the form, "moderately-severely limited" is defined as "[t]here is serious limitation in this area. The ability to function is severely limited but not precluded." (T. 1356.)

12

complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and ability to set realistic goals or make plans independently of others. Dr. Bierrenbach opined that the limitations he found had lasted or could be expected to last for 12 continuous months. (T. 1358.) Finally, Dr. Bierrenbach concluded that the limitations had existed for greater than two years and at the present level of severity for greater than two years. (T. 1358.)

On April 10, 2013, Dr. Bierrenbach diagnosed Plaintiff with the following: bipolar, type 1, most recent episode depressed, moderate;[15] attention deficit hyperactive disorder, inattentive type; and post-traumatic stress disorder. (T. 1260.) Dr. Bierrenbach opined that Plaintiff's GAF was 70. (T. 1260.) On July 30, 2014, Plaintiff saw Dr. Bierrenbach for pharmacological management. (T. 1487.) Plaintiff's mood was depressed, and her GAF was 50. (T. 1487.) On September 3, 2014, Plaintiff was seen by Dr. Bierrenbach for pharmacological management. (T. 1486.) Plaintiff's mood was "normal" and her GAF was 60. (T. 1486.) On November 5, 2014, Plaintiff was seen by Dr. Bierrenbach for pharmacological management. (T. 1485.) Dr. Bierrenbach diagnosed Plaintiff with the following: bipolar, type 1, most recent episode depressed moderate; attention deficit hyperactive disorder, inattentive type; and post-traumatic stress disorder. (T. 1485.) Dr. Bierrenbach opined that Plaintiff's GAF was 65. (T. 1485.)

On July 31, 2014, Plaintiff was admitted to the hospital under the care of Dr. Bierrenbach, for worsened depression and suicidality. (T. 1430.) Dr. Bierrenbach noted that Plaintiff suffers with depression and anxiety. (T. 1430.) Plaintiff reported auditory hallucinations. (T. 1430.) Plaintiff reported that she was previously hospitalized in a psychiatric hospital, and her maternal grandmother committed suicide due to depression. (T. 1430-31.) Dr. Bierrenbach opined that

---

[15] Listing 12.04 (Affective Disorders) encompasses bipolar disorder. See Penny v. Berryhill, No. 1:15CV1074, 2017 WL 590343, at *6 (M.D.N.C. Feb. 14, 2017).

Plaintiff suffered with the following: major depressive disorder with psychosis and generalized anxiety disorder. (T. 1431.) Dr. Bierrenbach determined that Plaintiff's GAF on discharge was 20.[16] (T. 1432.)

The ALJ gave "overall little weight" to Dr. Bierrenbach's June 3, 2013 assessments. (T. 43.) In particular, the ALJ gave "little weight" to Dr. Bierrenbach's opinion that Plaintiff equals Listings 12.04 and 12.06, and she has experienced "four or more" episodes of decompensation. (T. 43.) The ALJ gave "controlling" weight to Dr. Bierrenbach's opinion that Plaintiff has mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace. (T. 43.)

Plaintiff was also treated by Minerva Pineiro, M.D., a primary care physician. Dr. Pineiro treated Plaintiff primarily for her physical complaints, but he also treated her for depression and anxiety (T. 1291, 1292, 1294-95, 1297-99, 1300-08, 1310-11) and issues with insomnia (T. 1302, 1306, 1308). Dr. Pinero was also aware of Plaintiff's attention deficit disorder, in childhood (T. 1295, 1304, 1306). In May 2013, Dr. Pinero noted that Plaintiff seemed slightly manic[17] and tearful due to her depression and anxiety. (T. 1291.)

On October 23, 2012, Dr. Pineiro completed a "[m]edical statement" that outlined Plaintiff's mental limitations. (T. 1173-74.) Dr. Pineiro opined that as of March, 2010, Plaintiff was moderately-severely limited[18] in the following respects: the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to complete a normal workday and workweek without interruptions from psychologically based

---

[16] A GAF of 20 indicates the following: the individual is in some danger of hurting himself/herself/others, occasionally fails to maintain minimal personal hygiene, or has gross impairment in communication. Bower v. Barnhart, No. 2:02CV000147, 2003 WL 24054464, at *3 n.3 (W.D. Va. Aug. 13, 2003) (citing DSM-IV at 32).
[17] The medical note actually says "maniac," but that appears to be a typographical error.
[18] The form defines the term "moderately-severely limited" as "[t]here is serious limitation in this area, and the ability to function is severely limited but not precluded." (T. 1173.)

14

symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to work in coordination with, or in proximity to, others without being distracted by them; the ability to interact appropriately with the general public; and the ability to accept instructions and respond appropriately to criticism from supervisors. (T. 1173.)

The ALJ gave "some weight" to Plaintiff's mental limitations as found by Dr. Pineiro. (T. 42.) The ALJ gave "controlling weight" to the moderate restrictions. (T. 42.) As for the moderate-to-severe limitations, the ALJ gave them "little weight." (T. 42.)

On June 5, 2013, Jim Anderson, LCSW completed a "Psychiatric Review Technique" form, which addressed March, 2010 to the present. (T. 1359-1369.) Anderson opined that Plaintiff's mental impairments met Listings 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders). (T. 1359.) With respect to Listing 12.04, Anderson found that Plaintiff suffered a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. (T. 1362.) In particular, Anderson found that Plaintiff suffered a depressive syndrome characterized by the following: appetite disturbance with change in weight, sleep disturbance, decreased energy, and difficulty concentrating or thinking. (T. 1362.) As for Listing 12.06, Anderson opined that Plaintiff suffered with anxiety as the predominant disturbance or anxiety experienced in the attempt to master symptoms as evidenced by the following: generalized persistent anxiety accompanied by motor tension; apprehensive expectation; and recurrent or intrusive recollections of a traumatic experience, which are a source of marked distress. (T. 1364.) With respect to the "B" criteria, Anderson found that Plaintiff suffered a "moderate" restriction of activities of daily living. (T. 1368.) Anderson also found that Plaintiff suffered "marked" difficulties in the following: maintaining social functioning and difficulties in maintain concentration, persistence, or pace. (T. 1368.) Anderson determined that Plaintiff had suffered

three episodes of decompensation, each of extended duration. (T. 1368.) As for the "C" criteria, Anderson opined that Plaintiff had suffered repeated episodes of decompensation, each of extended duration. (T. 1369.)

Also on June 5, 2013, Anderson completed a "Medical Source Opinion (Mental)." (T. 1370-72.) Anderson opined that Plaintiff was "moderately-severely limited"[19] in the following respects: ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to sustain an ordinary routine without special supervision; ability to work in coordination with, or in proximity to, others without being distracted by them; ability to make simple work-related decision; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; ability to respond appropriately to changes in the work setting; ability to be aware of normal hazards and take appropriate precautions; and ability to travel in unfamiliar places or use public transportation. (T. 1370-72.) Anderson noted that the limitations he found to exist had lasted or could be expected to last for 12 continuous months, the limitations had existed at least two years, and the limitations existed at their present severity prior to January 2012. (T. 1372.) At the end of the form, Anderson wrote "This client is not capable of working, as she is unable at times to drive and/or find her way to therapy sessions and she has been seen weekly since 3/12/13." (T. 1372.)

---

[19] The form defines "moderately-severely limited" as follows: "There is serious limitation in this area. The ability to function is severely limited but not precluded." (T. 137.)

The ALJ gave "overall little weight" to Anderson's June, 2013 evaluations. (T. 45.) In particular, the ALJ gave "little weight" to Anderson's opinion that Plaintiff equals Listings 12.04 and 12.06, she has marked limitation in social functioning and concentration, persistence, or pace, and she has experienced three episodes of decompensation. (T. 45.) The ALJ gave "great weight" to Anderson's opinion that Plaintiff has moderate limitation in activities of daily living. (T. 45.) The ALJ gave "overall some weight" to Anderson's Medical Source Opinion (Mental). (T. 45.) The ALJ gave "great weight" to the moderate restrictions Anderson found. (T. 45.) The ALJ gave "little weight" to the moderate-severe restrictions. (T. 45.)

The Court is not persuaded by the ALJ's conclusions, as they relate to the assessment of Plaintiff's mental health. In support of the ALJ's findings, he found that Plaintiff's daily activities, except for those outlined in her hearing testimony, were not limited to the extent one would expect given the complaints of disabling symptoms and limitations. (T. 36, 40.) The ALJ further found that Plaintiff's allegations "lack[ed] credibility." (T. 37.) To support the ALJ's mental health conclusions, he refers to certain portions evaluations from Dr. Pineiro, a primary care physician. (T. 38.)

The Court is most concerned with the reliance on Dr. Pineiro to discount Bierrenbach's opinions regarding Plaintiff's mental impairments. Dr. Pineiro is a general practitioner, which is an acceptable medical source under the Regulations. See 20 C.F.R. § 404.1513(a) ("acceptable medical sources" include licensed physicians, medical or osteopathic doctors, and licensed or certified psychologists). Dr. Bierrenbach, however, is a psychiatrist, which means he is a medical doctor who specializes in the diagnosis and treatment of mental conditions. See Fulcher v. Astrue, 554 F. Supp. 2d 606, 609 (E.D.N.C. Mar. 27, 2008) ("[I]f there is a conflict between a specialist's opinion and a non-specialist's opinion, we generally give more weight to the opinion of a specialist

17

about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.") (citation omitted)).  Therefore, as a general rule, Dr. Bierrenbach's opinion was entitled to "more weight."  See 20 C.F.R. § 404.1527(c)(5).

Dr. Bierrenbach's opinion should also have been given "more weight" because it is supported by substantial evidence from <u>numerous</u> mental health professionals throughout the record.  For example, Dr. Miller opined that Plaintiff had a GAF of 45 and was "marginally capable" of handling her own business.  (T. 688-89.)  Also, Dr. Conroy concluded that "[Plaintiff] also would not be able to tolerate the stress and pressures associated with day to day activity."  (T. 898.)  Howell and Dr. Zeisz opined that due to Plaintiff's low tolerance for frustration, she would likely have difficulty interacting appropriately with coworkers and supervisors in an employment setting.  (T. 937.)  Finally, Anderson, like Dr. Bierrenbach, opined that Plaintiff met Listings 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders).  (T. 1343, 1359.)  Anderson also opined that "[Plaintiff] is not capable of working[.]"  (T. 1372.)

In sum, the ALJ's decision to discount the opinions offered by Dr. Bierrenbach, a treating specialist, fails to comply with the Regulations and relevant case law.  Consequently, Plaintiff is entitled to remand.[20]

## VI. Conclusion

In light of the foregoing, the Court RECOMMENDS that Plaintiff's motion for summary judgment (# 6) be GRANTED, and the case be REMANDED.  The Commissioner's motion for summary judgment (# 9) be DENIED.

Signed: March 6, 2018

*Dennis L. Howell*
Dennis L. Howell
United States Magistrate Judge

---

[20] Because the Court recommends remand on P  assignments of error.

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).